IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILLER POOLS, INC., d/b/a MILLER POOLS & SKI, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2005-366J |
| v. | ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) | JUDGE GIBSON |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

## SYNOPSIS

This matter comes before the Court on the Defendant's Motion to Dismiss/Motion for a More Definite Statement/Motion to Strike. Document No. 4. For the reasons that follow, the Defendant's Motion to Dismiss/Motion for a More Definite Statement/Motion to Strike will be denied.

## JURISDICTION

This action was originally commenced in the Court of Common Pleas, Cambria County, Pennsylvania. Document No. 1, p. 1, ¶ 1. The Defendant, Nationwide Mutual Insurance Company [hereinafter "Nationwide Mutual"], removed the case to this Court pursuant to 28 U.S.C. § 1441. Document No. 1. The Plaintiff, Miller Pools, Inc., d/b/a Miller Pools & Ski [hereinafter "Miller Pools"], is a Pennsylvania Corporation. Id., p. 2, ¶ 5. Nationwide Mutual is a corporation organized and existing under the laws of Ohio. Id., ¶ 6. Nationwide Mutual's principal place of business is located in Columbus, Ohio. *Id.* The amount in controversy exceeds the sum of $75,000.00. *Id.*, ¶ 7.

Accordingly, the Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332(a)(1).

**BACKGROUND**

Nationwide Mutual has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Document No. 4, pp 2-3, ¶¶ 4-5. An alternative Motion for a More Definite Statement has been filed pursuant to Federal Rule of Civil Procedure 12(e). *Id.*, p. 3, ¶ 6. Because the matter comes before the Court in this context, the allegations contained in Miller Pools' complaint are assumed to be true. *Anza v. Ideal Steel Supply Corp.*, __U.S.__, 126 S. Ct. 1991, 1994, 164 L. Ed.2d 720, 726 (2006).

Count I of Miller Pools' complaint alleges that Nationwide Mutual breached a contractural obligation owed to Miller Pools. Document No. 1, Ex. A, ¶¶ 86-88. Count II asserts a claim of bad faith under Pennsylvania law. *Id.*, ¶¶ 89-90. Nationwide Mutual seeks the dismissal of Count II. Document No. 4, pp. 2-3, ¶ 4.

According to the complaint, Miller Pools is a Pennsylvania corporation located in Johnstown, Pennsylvania. Document No. 1, Ex. A, ¶ 1. Nationwide Mutual is authorized to sell insurance in Pennsylvania, and it has a place of business in Wexford, Pennsylvania. *Id.*, ¶ 2. At all times relevant to the instant case, the business premises were owned by Donald Miller, Jr. [hereinafter "Miller"], and leased to Miller Pools. *Id.*, ¶ 4. On the evening of December 16, 2002, a fire occurred at the business premises known as Miller Pools & Ski, which is located in Johnstown, Pennsylvania. *Id.*, ¶ 3.

At the time of the fire, the business and premises were insured under Policy Number 58PR376120-3002 (the "Policy"), which was issued to Miller Pools by Nationwide Mutual. *Id.*, ¶ 5. The policy period was from February 15, 2002, through February 15, 2003. *Id.* The premium, which was $7,363.00, was fully paid at the time of the fire. *Id.*, ¶ 6. The Policy was purchased from Donner

Farber & Associates, Inc. [hereinafter "Donner Farber"], which is an insurance agency located in Berlin, Pennsylvania. *Id.*, ¶ 7. The Policy had an aggregate limit of $1,000,000.00 and a per occurrence limit of $500,000.00. *Id.*, ¶ 8. The Policy included various amounts of coverage, including Blanket Group A coverage in the amount of $270,504.00, replacement cost coverage in the amount of $270,504.00, business income with extra expense coverage in the amount of $85,000.00, and coverage extensions for valuable records and the personal property of others. *Id.*, ¶ 9. The premium basis for the policy period resulted from gross sales in the amount of $419,422.00, subcontracting work in the amount of $45,098.00, and payroll in the amount of $5,243.00. *Id.*, ¶ 10.

When the fire occurred, the property was subject to a first mortgage lien in favor of Cenwest Bank, which is located in Indiana, Pennsylvania. *Id.*, ¶ 11. On December 18, 2002, two days after the fire, Nationwide Mutual sent Miller Pools a notice of cancellation of the Policy. *Id.*, ¶ 12. The cancellation was effective as of February 15, 2003. *Id.* Nationwide Mutual also sent Miller Pools a reservation of rights letter, advising Miller Pools of potential coverage questions regarding the cause and origins of the fire. *Id.*, ¶ 13. On December 31, 2002, Nationwide Mutual sent Miller Pools a blank form for submission of proof of loss.[1] *Id.*, ¶ 14. Although the correspondence indicated that instructions for the completion of the form were enclosed, no such instructions were actually present. *Id.*, ¶ 15. The form was completed by a Miller Pools representative and sent to John Noble at Donner Farber via facsimile transmission. *Id.*, ¶ 16.

In a letter dated January 6, 2003, Miller Pools was advised of Nationwide Mutual's request that an examination under oath be taken. *Id.*, ¶ 17. One week later, Miller Pools received a request from

[1] Miller Pools' complaint actually states that this form was sent by Miller Pools to Nationwide Mutual. Document No. 1, Ex. A, ¶ 14. However, considering the context of the averment and the Court's examination of the actual correspondence, it is clear that this averment simply lists the parties backwards. Document No. 4, Ex. A, Pt. 2.

Nationwide Mutual to provide documentation. *Id.*, ¶ 18. Thereafter, on January 20, 2003, Miller was advised of the date scheduled for the examination and was instructed to bring all of the documents requested in the earlier letter. *Id.*, ¶ 19. Miller Pools proceeded to submit all of the requested documents to Nationwide Mutual on February 4, 2003, except for those which had been destroyed by the fire. *Id.*, ¶ 20. Nationwide Mutual was provided with information regarding how the contents of the destroyed information could be obtained in an alternative manner. *Id.* Miller Pools' accountant, Sylvester Scaletta, provided Nationwide Mutual with the spreadsheets used in the preparation of Miller Pools' tax returns for the years ending on March 31, 1999, March 31, 2000, and March 31, 2001. *Id.*, ¶ 21. On January 16, 2003, Miller Pools sent Nationwide Mutual a request for payment for the costs associated with the cleanup and removal of building debris resulting from the fire. *Id.*, ¶ 22. The lowest bid for the job was from Miller Pools' own contracting company, Simple Shelter, in the amount of $17,000.00. *Id.*, ¶ 23.

Nationwide Mutual sent a letter to Miller Pools on February 3, 2003, indicating that the investigation regarding Miller Pools' claim was still underway. *Id.*, ¶ 24. On February 24, 2003, Miller's examination was taken under oath, at the request of Nationwide Mutual. *Id.*, ¶ 26. Miller was subjected to detailed questioning by Nationwide Mutual regarding the claim, and he again submitted the documents which had previously been submitted to Nationwide Mutual pursuant to an earlier request. *Id.* On March 12, 2003, Miller Pools was again informed by Nationwide Mutual that the investigation regarding the claim remained in progress. *Id.*, ¶ 27.

On April 3, 2003, Miller received a letter from Victor Celo, who was Nationwide Mutual's forensic auditor. *Id.*, ¶ 28. In that letter, Miller was asked to provide extensive documentation to support its claim. *Id.* A significant amount of the requested information had already been provided to

Nationwide Mutual. *Id.*, ¶ 29. Most of the remaining information was unavailable because it had been destroyed in the fire. *Id.*, ¶ 30.

Miller Pools received a check from Nationwide Mutual on April 16, 2003. *Id.*, ¶ 31. It was in the amount of $221,760.35, and it was made payable to Miller Pools, Cenwest Bank and the Richland Township Trustees for the partial payment of the building loss coverage. *Id.* $179,700.35 went to Cenwest Bank to satisfy its first mortgage lien upon the destroyed property, $36,060.00 went into the Richland Township fire escrow account, and $6,000.00 went to Miller Pools. *Id.*, ¶ 32. $21,000.00 of the $36,060.00 originally paid into the Richland Township fire escrow account was eventually paid to Miller Pools. *Id.*, ¶ 33.

During the spring and summer of 2003, Miller Pools attempted to rebuild its business at a temporary location. *Id.*, ¶ 34. Miller Pools worked to obtain the permits necessary for building a temporary location and the financing necessary to rebuild its destroyed business. *Id.* During this period, Miller Pools received no compensation for its loss of inventory, property and income except for $6,000.00 for the building loss, an advance of $10,000.00 from Nationwide Mutual, and the $21,000.00 that was originally paid into the Richland Township fire escrow account. *Id.* Throughout the summer of 2003, Miller Pools continued to supply Nationwide Mutual with the documentation of its loss and to provide Nationwide Mutual's representative with access to its temporary premises. *Id.*, ¶ 35. In a letter dated August 11, 2003, Nationwide Mutual's attorney explained that the check for the building loss had represented the actual cash value of the structure, less depreciation. *Id.*, ¶ 36. The letter also said that if Miller Pools were to rebuild the structure, it could potentially be entitled to make a claim for the depreciation amo unt. *Id.* Finally, the letter requested that Miller Pools complete an authorization for the release of bank statements from First Commonwealth Bank of Pennsylvania,

claiming that the bank had failed to honor an earlier authorization. *Id.*, ¶ 37.

On October 6, 2003, Nationwide Mutual provided a breakdown regarding the damages paid for the building loss, claimed that $1,100.00 for debris removal was paid to Berkebile Excavating Company, suggested that additional documentation regarding debris removal should be sent to the claims adjuster, and advised that it was still in the process of investigating the remaining portions of Miller Pools' claim. *Id.*, ¶ 39. Miller Pools avers that Nationwide Mutual's assertion regarding the $1,100.00 paid to Berkebile Excavating Company was mistaken. *Id.* Thereafter, on October 28, 2003, Nationwide Mutual provided a breakdown of its estimation of Miller Pools' inventory loss, allegedly based on documents and information provided by Miller Pools and its accountant. *Id.*, ¶ 40. Nationwide Mutual determined that Miller Pools' inventory loss, when combined with the loss of computer equipment, amounted to $53,465.00. *Id.*, ¶ 41. A check for that amount was enclosed. *Id.* $90,999.00 was paid directly to Emerald Spa pursuant to its floor plan agreement with Miller Pools. *Id.*

On November 3, 2003, Miller sent a letter to Nationwide Mutual's representative seeking an explanation regarding the methods, information and calculations used by Nationwide Mutual to determine the amount of the inventory loss. *Id.*, ¶ 42. An additional letter requested similar information from another representative of Nationwide Mutual. *Id.*, ¶ 43. Miller Pools became frustrated by Nationwide Mutual's lack of responses to, and inadequate evaluation of, Miller Pools' claims. *Id.*, ¶ 44. Consequently, Miller sent a letter to Nationwide Mutual's agents on November 7, 2003, seeking assistance in obtaining the coverage and benefits which he believed to be owed to Miller Pools under the Policy. *Id.* One week later, Nationwide Mutual's adjustor responded by requesting that all questions related to the claim be directed to him. *Id.*, ¶ 45. He claimed that some of the documents

requested by Nationwide Mutual had not been submitted by Miller Pools. *Id.*

Nationwide Mutual's representative sent a letter dated January 19, 2004, to Miller Pools' representative inviting Miller Pools to submit documentation of the items being replaced for the purpose of obtaining reimbursement according to the replacement provisions of the Policy. *Id.*, ¶ 46. Miller Pools responded six days later by supplying Nationwide Mutual with summaries of its claim for the replacement value of its inventory, along with supporting documentation. *Id.*, ¶ 47. Miller Pools received no response from Nationwide Mutual. *Id.*, ¶ 48. On February 5, 2004, after a conversation between the representatives of Miller Pools and Nationwide Mutual, correspondence was sent via facsimile transmission to Nationwide Mutual's forensic auditor describing the occasions on which Nationwide Mutual was permitted to examine Miller Pools' records. *Id.*, ¶ 49. Miller Pools' representative also questioned how the total value of Miller Pools' inventory, as calculated by Nationwide Mutual, could be less than the amount of a single invoice for merchandise received less than three weeks before the fire. *Id.*

Miller Pools requested an explanation as to how a claim for loss of business income should be pursued. *Id.*, ¶ 50. Nationwide Mutual's representative responded on February 9, 2004, with a letter stating that Nationwide Mutual needed to review bank statements for the years 2002 and 2003, federal and state income tax returns for the same years, Miller Pools' starting and ending inventory for the year 2003, and the balance of the information previously requested by Victor Celo. *Id.* Two days later, Miller sent a letter to Nationwide Mutual's representative explaining that Nationwide Mutual had been given access to all of the records and documents which were available to Miller Pools. *Id.*, ¶ 51. The letter further stated that Nationwide Mutual's representatives had indicated their satisfaction regarding the access to documentation afforded by Miller Pools. *Id.* Finally, the letter questioned Nationwide

Mutual's requests for records that simply did not exist. *Id.*, ¶ 52.

Miller Pools submitted additional documentation in support of its claim with correspondence to Nationwide Mutual dated November 3, 2004. *Id.*, ¶ 55. The documentation included much of the same information that had been submitted to Nationwide Mutual on earlier occasions. *Id.*, ¶ 56. An extensive analysis of the Policy, the losses sustained by Miller Pools in the fire, and the documents submitted to Nationwide Mutual was presented to Nationwide Mutual's adjustor and legal counsel for the purpose of substantiating a demand for $388,236.00 due under the provisions and coverage extensions of the Policy. *Id.*, ¶ 58. Nationwide Mutual's adjustor, forensic auditor and legal counsel were provided with information about how Miller Pools' accountant reconstructed the inventory, sales and expense amounts necessary for the preparation of the requested income tax returns. *Id.*, ¶ 59. They were also invited to consult with Miller Pools' accountant and to review the documents in his possession. *Id.*

As the attorneys for Miller Pools and Nationwide Mutual commenced settlement negotiations, a Writ of Summons was filed in the Court of Common Pleas, Cambria County, Pennsylvania, on December 8, 2003. *Id.*, ¶ 60. Miller Pools took this action in order to preserve its claim. *Id.* On December 13, 2004, Nationwide Mutual's attorney sent a letter to Miller Pools' attorney seeking more documents. *Id.*, ¶ 61. Miller Pools avers that most of the requests were redundant or petty, and that the information sought by Nationwide Mutual had either been provided before or could have been determined by Nationwide Mutual had it contacted Miller Pools' accountant. *Id.*, ¶ 62. The attorney for Miller Pools responded with a letter dated January 20, 2005, which highlighted the expenses incurred by Miller Pools with respect to its efforts to support its claim with appropriate documentation. *Id.*, ¶ 65. Several documents were sent with this letter. *Id.*, ¶ 64.

In February, 2005, Nationwide Mutual's attorney requested another examination of Miller. *Id.*, ¶ 67. Miller Pools' attorney denied this request for a second examination, given that the matter had proceeded into litigation and that Nationwide Mutual had already been afforded the opportunity to examine Miller under oath. *Id.*, ¶ 68. On February 17, 2005, Nationwide Mutual's representative requested additional authorizations for the release of Miller Pools' tax returns for the years spanning 2000 through 2004, contending that Miller Pools had failed to provide its employer identification number on the prior authorizations. *Id.*, ¶ 69. Miller Pools further alleges that the documents previously provided to Nationwide Mutual had been copies of the actual returns, and that they had contained all of the information needed by Nationwide Mutual to complete the authorizations already executed by Miller Pools. *Id.*, ¶ 70.

In a letter dated March 2, 2005, the attorney for Miller Pools informed the attorney for Nationwide Mutual that Miller Pools was owed $388,236.00. *Id.*, ¶ 71. Nationwide Mutual sent Miller Pools a check in the amount of $9,200.00 for the debris removal work performed by Simple Shelter. *Id.*, ¶ 72. Miller Pools alleges that the actual cost of the debris removal was $17,000.00. *Id.*, ¶ 73. The $9,200.00 payment was sent by Nationwide Mutual on May 13, 2005, along with a letter denying the remaining claims asserted by Miller Pools. *Id.*, ¶¶ 72, 75. The payment came seventeen months after Miller Pools had submitted the invoices and competing bids according to the instructions of Nationwide Mutual's representative. *Id.*, ¶ 74. Nationwide Mutual indicated that the remaining claims were denied on the basis of the documentation and/or lack of documentation submitted by Miller Pools. *Id.*, ¶ 75.

The complaint further alleges that Nationwide Mutual failed to evaluate Miller Pools' claims in a fair and objective manner, wrongfully compelled Miller Pools to incur the unreasonable costs associated with the reconstruction of destroyed records, wrongfully conditioned its consideration of

Miller Pools' claims on the production of documents which had been destroyed in the fire, and otherwise withheld or denied coverage in an unreasonable manner. *Id.*, ¶ 81. Miller Pools avers that, as a result of Nationwide Mutual's refusal to pay the money due to it under the Policy, it has been forced to conduct its business in a very small location, has been prevented from resuming normal business operations, and has suffered a loss of its business reputation. *Id.*, ¶ 85. Count I alleges that Nationwide Mutual breached a contractual obligation owed to Miller Pools under Pennsylvania law, and Count II alleges that Nationwide Mutual acted in bad faith throughout the claims handling process. *Id.*, ¶¶ 86-90.

## DISCUSSION

Nationwide Mutual has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.[2] Document No. 4. In this Motion to Dismiss, Nationwide Mutual tests only the sufficiency of Count II of Miller Pools' complaint. Count II states as follows:

> 89. The foregoing paragraphs are incorporated by reference as if fully rewritten herein.
>
> 90. For the reasons set forth above, including, but not limited to:
>
> (a) Failing to promptly provide indemnification to Plaintiff;
>
> (b) Failing to objectively and fairly evaluate the Plaintiff's claims;
>
> (c) Unreasonably valuing the Plaintiff's loss and failing to fairly negotiate the amount of the loss with Plaintiff and its representatives;

---

[2] Nationwide Mutual also requests that the Court strike the eighth paragraph in Miller Pools' complaint, which simply states that "[t]he limits of insurance under the Policy included a general aggregate limit of $1,000,000.00 and a per occurrence limit of $500,000.00." Document No. 1, Ex. A, ¶ 8; Document No. 4, p. 2, ¶ 3. Nationwide Mutual's Motion to Strike is before the Court pursuant to Federal Rule of Civil Procedure 12(f), which allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Nationwide Mutual contends that the limits are immaterial to the present case because no claim for liability coverage is at issue. Document No. 5, p. 2. This argument, however, is not well developed, and it is difficult to fathom how striking background information about the Policy would serve the interests contemplated by the drafters of Rule 12(f). This Court enjoys liberal discretion with respect to a motion filed pursuant to Rule 12(f). *Nationwide Insurance Company v. Central Missouri Electric Cooperative, Inc.*, 278 F.3d 742, 748 (8th Cir. 2001). Nationwide Mutual's Motion to Strike will be denied.

(d) Failing to keep the Plaintiff and its representatives fairly and adequately advised of the status of its claims;

(e) Conducting an unfair, unreasonable, and inadequate investigation of the Plaintiff's claims;

(f) Unreasonably withholding policy benefits without reasonable basis;

(g) Knowingly and recklessly denying the balance of the Plaintiff's claims without reasonable basis; and,

(h) Unreasonably compelling litigation,

Defendant Nationwide has violated the Policy's covenant of good faith and fair dealing and/or committed the tort of bad faith, including, *but not limited to* violating 42 Pa.C.S.A. § 8371, for which Defendant Nationwide is liable for interest on the claim, from the date the claim was made, in an amount equal to the prime rate of interest plus three percent, court costs, attorney's fees, punitive damages, and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, Plaintiff demands compensatory, consequential, and punitive damages from Defendant Nationwide in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, court costs, attorney's fees, and such other relief as this Honorable Court shall deem just and proper.

Document No. 1, Ex. A, ¶¶ 89-90 (emphasis added). The paragraphs incorporated within Paragraph 89 include, *inter alia*, an allegation that Nationwide Mutual conditioned the consideration of Miller Pools' claim on the production of documents that were destroyed in the fire and, consequently, not available to Miller Pools. *Id.*, ¶ 81.

The plain language of Miller Pools' complaint reveals that Count II is predicated upon Pennsylvania's Bad Faith Statute, 42 PA. C.S. § 8371, only in part. *Id.*, ¶ 90. Although this count alleges a violation of § 8371, it is clear that the bad faith averments are *not limited to* a cause of action based on that statute. *Id.* With that in mind, the Court now turns to Nationwide Mutual's arguments in support of its Motion to Dismiss.

Pennsylvania's Bad Faith Statute provides, in pertinent part, as follows:

> § 8371. Actions on insurance policies
>
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. C.S. § 8371. Nationwide Mutual argues that Miller Pools' complaint, with respect to Count II, fails to state a claim upon which relief can be granted. Document No. 5, pp. 4-9. This argument is meritless.

Since this matter is before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint liberally and assume that all of the factual allegations included therein are true. *Marshall v. Lauriault*, 372 F.3d 175, 179 (3d Cir. 2004). Nationwide Mutual can prevail at this stage only by showing that Miller Pools can prove no set of facts, consistent with the allegations contained in the complaint, that would entitle it to relief. *Id.* Under this standard, it is clear that Nationwide Mutual's Motion to Dismiss must be denied.

In *Terletsky v. Prudential Property and Casualty Insurance Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994), the Pennsylvania Superior Court explained that a plaintiff, in order to recover under a claim of bad faith, "must show that the defendant did not have a reasonable basis for denying benefits under the policy and that [the] defendant knew [of] or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky*, 649 A.2d at 688. "[B]ad faith must be proven by clear and convincing

evidence and not merely insinuated." *Id.* Earlier this year, in *Condio v. Erie Insurance Exchange*, 899 A.2d 1136 (Pa. Super. Ct. 2006), the Superior Court noted that "Pennsylvania law holds insurers to a duty of good faith and fair dealing toward their insureds without distinguishing between first party and third party settings." *Condio*, 899 A.2d at 1144.

Despite Nationwide Mutual's contention to the contrary, Miller Pools' complaint alleges precisely the type of conduct that would support a bad faith claim pursuant to § 8371. Count II alleges that Nationwide Mutual conducted an unfair, unreasonable and inadequate investigation of the claims made by Miller Pool in relation to the fire, failed to fairly negotiate the amount of the loss sustained by Miller Pools, and knowingly and/or recklessly denied the balance of Miller Pools' claims without having a reasonable basis for doing so. Document No. 1, Ex. A, ¶ 90. Incorporated within this count are allegations that Nationwide Mutual engaged in dilatory and abusive claims handling, compelled Miller Pools to incur unreasonable costs to reconstruct destroyed business records, insisted that Miller Pools produce documents that were destroyed in the fire as a condition for having its claims considered, and failed to provide a reasonable factual explanation as to the basis for the ultimate denial of the claims. *Id.*, ¶¶ 81, 89. Miller Pools' complaint clearly states a claim of bad faith under § 8371.

The Superior Court, in *Brown v. Progressive Insurance Company*, 860 A.2d 493 (Pa. Super. Ct. 2004), explained that "[b]ad faith encompasses a wide variety of conduct." *Brown*, 860 A.2d at 500. Although a showing of mere negligence or bad judgment is insufficient to establish bad faith for purposes of § 8371, a showing of fraudulent conduct is not necessary. *Id.* at 501. "To support a finding of bad faith, the insurer's conduct must be such as to import a dishonest purpose." *Id.* (internal quotation marks and brackets omitted). "Bad faith will be shown where an insurer has for a frivolous or unfounded reason refused to pay the proceeds of a policy to its insured." *Hollock v. Erie Insurance*

*Exchange*, 842 A.2d 409, 416 (Pa. Super. Ct. 2004). The allegations contained in Miller Pools' complaint, which are assumed to be true for purposes of Nationwide Mutual's Motion to Dismiss, clearly include averments sufficient to surmount this hurdle.

Nationwide Mutual argues that "[a] delay or refusal by the insured to provide records supportive of its claim for benefits is a reasonable basis for an insurer to refuse or delay payment." Document No. 5, p. 6. Miller Pools, however, alleges more than that. The complaint alleges that Nationwide Mutual conditioned its consideration of Miller Pools' claims on the production of documents that had been destroyed in the fire. Document No. 1, Ex. A, ¶¶ 81, 89. It is, of course, true that the Pennsylvania courts "have not recognized bad faith where the insurer makes a low but reasonable estimate of the insured's losses[.]" *Brown*, 860 A.2d at 501.. Nevertheless, that is not all that Miller Pools alleges. The complaint alleges that Nationwide Mutual assessed the value of Miller Pools' destroyed inventory at an amount less than a *single invoice* for merchandise received less than three weeks before the fire occurred. Document No. 1, Ex. A, ¶ 49. While the Court expresses no opinion as to whether the allegations contained in the complaint are true, it is obvious that the complaint alleges conduct sufficiently dishonest to constitute "bad faith" within the meaning of § 8371. For purposes of the instant Motion to Dismiss, the Court's inquiry need not proceed further.

Since the Court has determined that Count II of the complaint should not be dismissed, the Court must address Nationwide Mutual's argument that Miller Pools' purported claim for lost business income or business reputation must be dismissed insofar as it is incorporated within Count II. Document No. 4, p. 3, ¶ 5. Nationwide Mutual contends that damages for lost business income and/or harm to business reputation are not recoverable as an element of damages under § 8371. Document No. 8, p. 2. It seeks an order striking the incorporation of Paragraph 85 within Paragraph 89, which appears

in Count II of the complaint. Paragraph 85 states as follows:

> 85. As a result of the Defendant's refusal to pay Plaintiff the monies due to it under the policy, the Plaintiff has been forced to conduct its business operations at a temporary location consisting of 1,000 sf, as compared to its prior destroyed location consisting of 11,000 sf, has been prevented from resuming normal business operations, has suffered a greatly reduced income, and has suffered loss of its business reputation.

Document No. 1, Ex. A, ¶ 85. Miller Pools argues that Paragraph 85 is not a request for compensatory damages under § 8371, but rather an averment of fact to support a finding of bad faith. Document No. 7, p. 13. For this reason, Miller Pools contends that the Court should deny Nationwide Mutual's Motion to Strike.

The problem with Nationwide Mutual's argument is that, like its other arguments with respect to the instant matter, it ignores the plain language of the complaint. Nationwide Mutual asserts that "[t]here is no precedent to support a claim for such consequential damages as lost business income or reputation in an action based solely upon § 8371 and solely to recover *first party* insurance benefits[.]" Document No. 5, p. 12 (emphasis in original). The complaint, however, clearly states that "Defendant Nationwide has violated the Policy's covenant of good faith and fair dealing and/or committed the tort of bad faith, including, *but not limited to* violating 42 PA. C.S.A. § 8371, for which Defendant Nationwide is liable for interest on the claim, from the date the claim was made, in an amount equal to the prime rate of interest plus three percent, court costs, attorney's fees, punitive damages, and such other compensatory and/or consequential damages allowed by law." Document No. 1, Ex. A, ¶ 90 (emphasis added). The plain language of the complaint indicates that Count II is not based *solely* upon § 8371. Count I alleges that Nationwide Mutual "breached its contractual obligation to the Plaintiff under the Policy[,]" whereas Count II alleges that Nationwide Mutual "violated the Policy's covenant

of good faith and fair dealing and/or committed the tort of bad faith[.]" *Id.*, ¶¶ 88, 90. Although Count II is based in part upon § 8371, it also appears to be based on a "covenant of good faith and fair dealing" otherwise imposed by Pennsylvania law. That is the only reasonable way in which the words "but not limited to violating 42 PA. C.S.A. § 8371" can be construed.

The question of whether compensatory and/or consequential damages are available under Pennsylvania law in a case alleging a violation of the covenant of good faith and fair dealing is not the focus of Nationwide Mutual's argument. Nationwide Mutual bases its argument on the unavailability of compensatory damages under § 8371. Document No. 5, pp. 9-12. For this reason, Miller Pools makes it clear that the incorporation of Paragraph 85 into Count II is not a request for compensatory damages under § 8371. Document No. 7, p. 13. Nationwide Mutual, in its reply brief, now seeks an order stating that compensatory and/or consequential damages are not recoverable with respect to Count II. Document No. 8, p. 2. Since Miller Pools' brief was filed six days prior to Nationwide Mutual's reply brief, it obviously does not address Nationwide Mutual's latest request.[3] Document Nos. 7-8. Nevertheless, the Court is convinced that the relief requested by Nationwide Mutual cannot be granted.

As noted earlier, Count II appears to allege more than a cause of action under § 8371. It alleges a violation of the covenant of good faith and fair dealing *and/or* the commission of the tort of bad faith. Document No. 1, Ex. A, ¶ 90. Given the allegations contained in the complaint and the relief requested

[3] Miller Pools has made no specific argument with respect to breadth of the allegations contained in Count II, opting instead to discuss only bad faith under § 8371. Document No. 7, pp. 5-10. The Court assumes that this is due to the fact that Nationwide Mutual's argument focuses only on § 8371, ignoring the language in Count II which indicates that the allegations contained therein are not limited to that statute. Document No. 5, pp. 9-12. Miller Pools has not responded to Nationwide Mutual's reply brief. Document No. 8. In any event, since Nationwide Mutual is the moving party, it must make a complete argument in order to demonstrate that it is entitled to the relief that it seeks. *Adarand Constructors v. Mineta*, 534 U.S. 103, 109-11, 122 S. Ct. 511, 514-15, 151 L. Ed.2d 489, 495-96 (2001). Count II unambiguously states that the allegations therein include, *but are not limited to*, bad faith within the meaning of § 8371. Document No. 1, Ex. A, ¶ 90. Since Count II, on its face, encompasses more than a cause of action under § 8371, Nationwide Mutual cannot have the language regarding compensatory damages stricken from Count II solely by arguing that such damages are not available under the statute.

by Nationwide Mutual, the Court must define the parameters within which this case can proceed.[4] Under Pennsylvania law, Miller Pools cannot recover compensatory damages based on § 8371. *The Birth Center v. The St. Paul Companies, Inc.*, 787 A.2d 376, 386 (Pa. 2001). Nevertheless, § 8371 does not prohibit an award of compensatory damages. *Id.* Compensatory damages are available under Pennsylvania's common law of contracts, even where the action is brought under a bad faith theory. *Id.*, n. 12. The law of Pennsylvania recognizes "a common law action for bad faith sounding in contract." *Johnson v. Beane*, 664 A.2d 96, 101 (Pa. 1995)(Cappy, J., concurring).[5] Pennsylvania does not recognize a common law tort action for bad faith. *Id.*; *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 431 A.2d 966 (Pa. 1981). Accordingly, the only tort remedy for bad faith available under Pennsylvania law is that provided by § 8371. *The Birth Center*, 787 A.2d at 390-391 (Nigro, J., concurring). Insureds may "supplement the breach of contract damages that they can obtain through their bad faith contract action by also bringing a claim under § 8371 for the specific damages authorized in that statute." *Id.* at 391 (Nigro, J., concurring). Finally, contrary to the argument of Nationwide Mutual, "Pennsylvania law holds insurers to a duty of good faith and fair dealing toward their insureds *without distinguishing between first party and third party settings*." *Condio*, 899 A.2d

[4] The Court acknowledges that there is a significant degree of disagreement among the members of the Pennsylvania Supreme Court with respect to the proper characterization of bad faith claims, whether they arise under § 8371 or otherwise. *Mishoe v. Erie Insurance Company*, 824 A.2d 1153, 1161, n. 11 (Pa. 2003). As a federal court sitting in diversity, this Court must attempt to ascertain how the Pennsylvania Supreme Court would rule if it were presented with the same issue. *Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls*, 306 U.S. 103, 59 S. Ct. 420, 83 L .Ed. 515 (1939). The Court's appraisal of Pennsylvania law in this case is consistent with the observations made by the Pennsylvania Supreme Court in *The Birth Center* and *Mishoe*.

[5] This Court does not agree with Nationwide Mutual's argument that *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995), precludes an award of compensatory damages in a Pennsylvania common law bad faith action sounding in contract. *Caplan* simply does not address the question raised in the instant case. Even if it had addressed this issue, however, the applicable law in this case is the law of Pennsylvania. In *The Birth Center*, the Supreme Court of Pennsylvania expressed its agreement with Justice Cappy's concurring opinion in *Johnson*. *The Birth Center*, 787 A.2d at 386 n.12. It is now clear that Pennsylvania law permits a party bringing a bad faith action sounding in contract to recover damages that are otherwise available to parties in contract actions. *Id.* at 386.

at 1144 (citations omitted; emphasis added).

Turning to Miller Pool's complaint, Count I alleges that Nationwide Mutual breached its contractural obligation to Miller Pools under the Policy by failing to pay the balance of $379,036.00. Document No. 1, Ex. A, ¶ 88. This common law contract claim is not based on bad faith, but rather on the simple allegation that Miller Pools was not paid money owed to it under the Policy. Count II expressly alleges conduct which violated both the contractural "covenant of good faith and fair dealing" and "the tort of bad faith." *Id.*, ¶ 90. Count II includes a common law action sounding in contract that is separate and distinct from the common law contract claim made in Count I. That is the only reasonable way in which the Court can construe Miller Pools' language including the tort remedy provided by § 8371 within Count II, but not limiting Count II solely to a claim under that statute. Accordingly, Miller Pools can proceed with its breach of contract actions under Counts I and II, supplementing its action under Count II with a tort claim under § 8371 for the specific damages authorized in that statute.[6] *The Birth Center*, 787 A.2d at 391 (Nigro, J., concurring).

[6] In his concurring opinion in *The Birth Center*, Justice Nigro discussed the precise distinction between compensatory damages and consequential damages. *The Birth Center*, 787 A.2d at 390, n. 1. This Court need not define, at this stage, the precise contours of the damages available under the different causes of action arising under Pennsylvania law. For purposes of the instant matter, it is sufficient to say that Nationwide Mutual is not entitled to an order striking the language in Count II requesting compensatory and/or consequential damages, since Count II alleges more than a violation of § 8371. It is worthy of note, however, that the Pennsylvania Superior Court recently characterized the attorney'sfees, costs and interest available under § 8371 as "compensatory damages" for purposes of determining whether an award of punitive damages was sufficiently excessive to violate the Due Process Clause of the Fourteenth Amendment. *Hollock v. Erie Insurance Exchange*, 842 A.2d 409, 421-422 (Pa.Super. 2004). Under the U.S. Supreme Court's decision in *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed.2d 585 (2003), "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award" is one of the guideposts to be considered when determining whether a particular punitive damages award is unconstitutionally excessive. *State Farm*, 538 U.S. at 418, 123 S. Ct. at 1520, 155 L. Ed.2d at 601. With respect to this guidepost, the Supreme Court stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.*, 538 U.S. at 425, 123 S. Ct. at 1524, 155 L. Ed.2d at 605-06. The Superior Court explained that the specific damages available under § 8371(1) and § 8371(3) are "compensatory damages" for purposes of evaluating the constitutionality of a punitive damages award under § 8371(2). *Hollock*, 842 A.2d at 421-422. The U.S. Court of Appeals for the Third Circuit adopted a similar position in *Willow Inn, Inc. v. Public Service Mutual Insurance Company*, 399 F.3d 224, 236-37 (3d Cir. 2005). Therefore, it is important to remember that the term "compensatory damages" sometimes has different meanings in different contexts. Although this Court agrees that the type of compensatory damages

Nationwide Mutual has also filed a Motion for a More Definite Statement. Document No. 4, p. 3, ¶¶ 6-7. In support of this Motion, Nationwide Mutual argues that Count II does not specify how Nationwide Mutual allegedly acted in bad faith. Document No. 5, pp. 8-9. Remarkably, Nationwide Mutual had no problem figuring out that Paragraph 89 incorporates Paragraph 85 within Count II. *Id.*, p. 10. Perhaps it should have noticed that Paragraph 89 also incorporates Paragraphs 1-84. Having been originally filed in a Pennsylvania court, the complaint was drafted to comply with Pennsylvania's fact-pleading system. Under that system, "the pleader must define the issues and every act or performance essential to that end must be set forth in the complaint." *Cable & Associates Insurance Agency, Inc. v. Commercial National Bank of Pennsylvania*, 875 A.2d 361, 365 (Pa.Super. 2005). A complaint so drafted easily comports with the less rigorous notice-pleading system applicable in federal court. *Akos Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-515, 122 S.Ct. 992, 997-999, 152 L.Ed.2d 1, 9-11 (2002). Nationwide Mutual claims that it needs more specific information in order to respond to the complaint. Document No. 4, p. 3; Document No. 5, pp. 7-9. All of the information sought, however, is contained within Paragraphs 1-84 of the complaint, and the exhibits referenced therein. Document No. 1, Ex. A, ¶¶ 1-84. The Court will not dignify Nationwide Mutual's argument by addressing it further.

## CONCLUSION

Miller Pools concedes that compensatory damages are not available under § 8371. Document No. 7, p. 13. The Court construes Count II of the complaint in accordance with Pennsylvania law,

---

available under Pennsylvania's common law of contracts are not available under § 8371, both theSuperior Court and the Court of Appeals have characterized some of the damages available under that statute as "compensatory damages" in another context. For this reason, Miller Pools' use of that term in Count II, even if Count II alleged only a violation of § 8371, would not be as absurd as Nationwide Mutual suggests.

which permits the recovery of compensatory damages under the common law of contracts but not under the tort remedy provided by § 8371. Accordingly, the Court will not strike the incorporation of Paragraph 85 within Paragraph 89 of Miller Pools' complaint. The Court does note, of course, that any recovery of compensatory damages in this case must come from a source other than § 8371. The complaint clearly alleges claims of bad faith arising under Pennsylvania law, and the averments included therein are of sufficient clarity and specificity to put Nationwide Mutual on notice of the bases for these claims. Furthermore, the complaint contains no "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Federal Rule of Civil Procedure 12(f). For these reasons, the Court must deny Nationwide Mutual's Motion to Dismiss/Motion for a More Definite Statement/Motion to Strike. Document No..4. The Court emphasizes that, at this stage, the averments contained within the complaint are assumed to be true. *Anza*, 126 S.Ct. at 1994, 164 L.Ed.2d at 726. No opinion is expressed with respect to the ultimate resolution of this case. It suffices to say that the complaint filed by Miller Pools does not contain any of the defects identified by Nationwide Mutual with respect to the applicable subsets of Federal Rule of Civil Procedure 12.

An appropriate Order follows.

**AND NOW**, this 29th day of September, 2006, this matter coming before the Court on the Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e), and Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f) (Document No. 4), IT IS HEREBY ORDERED THAT all of Defendant's Motion are DENIED.

**BY THE COURT:**

Kim R. Gibson

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record